[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Watkins Global Network, L.L.C.,* Slip Opinion No. 2020-Ohio-169.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-169

OHIO STATE BAR ASSOCIATION *v.* WATKINS GLOBAL NETWORK, L.L.C.,

ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Watkins Global Network, L.L.C.,* Slip Opinion No. 2020-Ohio-169.]**

*Unauthorized practice of law—A person may negotiate a debt on behalf of another without practicing law—Whether a person engages in the practice of law while negotiating a debt depends on whether that person's actions include the rendering of legal services, such as giving legal advice, drafting legal documents, or raising legal defenses—Injunction issued and civil penalty imposed in 1 of 31 alleged instances of misconduct.*

(No. 2019-0008—Submitted June 11, 2019—Decided January 23, 2020.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 14-03.

_____

**STEWART, J.**

{¶ 1} In June 2014, relator, the Ohio State Bar Association, filed a complaint with the Board on the Unauthorized Practice of Law charging that respondent Mario W. Watkins, in an individual capacity, as the owner of respondent Watkins Global Network, L.L.C., and while doing business as respondent Jones, Marco & Stein, engaged in the unauthorized practice of law by representing small businesses in debt-settlement negotiations with creditors.

{¶ 2} After reviewing the matter on relator's motion for summary judgment, a panel of the board found that respondents had practiced law in violation of Ohio's licensure requirements on 31 occasions—each relating to a separate business client for whom respondents negotiated debt settlements between the years 2008 and 2013. The panel recommended enjoining respondents from any future unauthorized practice of law, imposing a civil fine in the amount of $1,000 per violation for a total fine of $31,000, to be paid jointly and severally by respondents, and ordering respondents to pay the costs associated with the case. The board adopted the panel's findings of fact, conclusions of law, and recommendations.

{¶ 3} After reviewing the record, we reject the board's conclusion that respondents engaged in the unauthorized practice of law on 31 occasions. Watkins failed to gain any clients while doing business as respondent Jones, Marco & Stein. And for reasons explained in greater detail below, we find only one instance in which Watkins, while working as an employee of Watkins Global, engaged in the unauthorized practice of law. For that single violation, we agree with the board that a $1,000 civil penalty is warranted. We further enjoin Watkins and Watkins Global from engaging in the unauthorized practice of law in the future. Costs are waived.

## I. RELEVANT BACKGROUND

{¶ 4} Watkins Global is an Ohio limited-liability company that represents small-business debtors in debt-settlement negotiations with creditors in exchange for either an hourly fee or a contingent fee. Watkins is and has been the owner,

registered agent, and sole employee of Watkins Global since the company was first registered with the Ohio Secretary of State in 2007. Watkins is not, and has never been, licensed to practice law in the state of Ohio.

{¶ 5} In August 2012, Watkins registered the name Jones, Marco & Stein as a fictitious name for Watkins Global with the Ohio Secretary of State. Although the name suggests otherwise, Watkins is the only individual associated with Jones, Marco & Stein. Watkins operated under the fictitious name for a short period of time between August 2012 and October 2012; he sent marketing letters to potential clients on Jones, Marco & Stein letterhead. However, no clients retained Watkins as a result of these letters. In October 2012, relator sent a letter to respondents questioning their business practices. Watkins answered relator's letter of inquiry and further cooperated in relator's investigation by producing client files and giving deposition testimony. In a letter dated May 15, 2013, Watkins detailed the number of clients he had represented in debt-settlement negotiations and the amount of fees he had collected from those clients from 2007 to 2013:

| 2007 | No clients | No income |
|------|------------|-----------|
| 2008 | One client | $734.00 |
| 2009 | One client | $922.00 |
| 2010 | Six clients | $15,857.00 |
| 2011 | Four clients | $11,050.00 |
| 2012 | Seventeen clients | $40,180.00 |
| 2013 | Two clients | $1,400.00 |

Watkins's letter further advised relator that he had ceased engaging in debt negotiations as Jones, Marco & Stein after he received relator's October 2012 letter advising him of the investigation.

{¶ 6} On June 14, 2014, relator filed its complaint with the board pursuant to Gov.Bar R. VII(5). In it, relator asserted that respondents had "represented businesses in negotiations with creditors to resolve debts since 2008" and, in so doing, had "engaged in the unauthorized practice of law by acting as an intermediary to advise, counsel or negotiate on behalf of a business in an attempt to resolve a collection claim between debtors and creditors." Relator further alleged that "[r]espondents engaged in [31] instances of misconduct from 2008 through 2013" and that the business owners who hired respondents had been harmed by the $70,143 in fees respondents collected for services rendered. Relator attached Watkins's letter detailing the number of clients and amount of fees collected since 2008 as an exhibit to the complaint ("Exhibit 1").

{¶ 7} In their answer, respondents admitted that they had represented businesses in debt-settlement negotiations with creditors but denied that their actions amounted to the practice of law. Respondents further denied ever advising their clients in legal matters.

{¶ 8} Thereafter, relator filed a motion for summary judgment, which respondents opposed. Finding in favor of relator, the board adopted the following finding of the panel:

[T]he undisputed facts establish Respondents Watkins Global Network LLC, Jones Marco & Stein and Mario W. Watkins engaged in the unauthorized practice of law by providing advice, counseling and negotiating business debts on behalf of 31 small business customers with the customer's creditors or the creditors' legal counsel as identified by Respondents in the letter attached and authenticated as Complaint, Exhibit 1.

## II. DISPOSITION

### A. Defining the Unauthorized Practice of Law

{¶ 9} The unauthorized practice of law includes both holding oneself out as an attorney when one is not licensed to practice law, Gov.Bar R. VII(2)(A)(4), and "rendering * * * legal services for another" although not admitted to practice law in Ohio, Gov.Bar R. VII(2)(A)(1). For decades, we have maintained that "rendering legal services" includes appearing on behalf of another in court, preparing pleadings and other papers for use in legal actions, preparing legal instruments of all kinds, and providing legal advice and counsel to clients. *See Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 193 N.E. 650 (1934), paragraph one of the syllabus; *Cincinnati Bar Assn. v. Telford*, 85 Ohio St.3d 111, 112, 707 N.E.2d 462 (1999). In *Ohio State Bar Assn. v. Kolodner*, 103 Ohio St.3d 504, 2004-Ohio-5581, 817 N.E.2d 25, ¶ 15, however, we stated that the unauthorized practice of law also "includes representation by a nonattorney who * * * negotiates on behalf of an individual or business in the attempt to resolve a collection claim between debtors and creditors."

{¶ 10} In this case, both relator and the board rely on our statements in *Kolodner* to conclude that respondents engaged in the unauthorized practice of law when they represented 31 clients in debt-settlement negotiations. Today, we use this case as an opportunity to clarify that our statements in *Kolodner* do not amount to a per se rule that any person who negotiates a settlement of a debt on behalf of another but who does not have a license to practice law in the state of Ohio engages in the unauthorized practice of law. Instead, whether a person engages in the unauthorized practice of law turns on the specific actions a person takes while attempting to negotiate a settlement and whether those actions constitute the rendering of legal services.

### B. *Kolodner*

{¶ 11} In *Kolodner*, we examined whether a nonattorney who had held himself out as an attorney-in-fact and who stipulated that he had "advised, counseled, and represented various customers regarding payment of their outstanding debts and negotiated settlements of the debts," *id*. at ¶ 3, had engaged in the unauthorized practice of law. Kolodner himself conceded that this behavior constituted the unauthorized practice of law. *Id*. at ¶ 4. And we agreed. *Id*. at ¶ 15. Although we cited two cases, *Cincinnati Bar Assn. v. Telford*, 85 Ohio St.3d 111, 707 N.E.2d 462 (1999), and *Cincinnati Bar Assn. v. Cromwell*, 82 Ohio St.3d 255, 695 N.E.2d 243 (1998), to support our statement in *Kolodner* that the practice of law includes negotiating the settlement of a debt for another, those cases do not support such a general statement of the law. Specifically, in those cases, the respondents gave legal advice to clients, drafted legal documents, and asserted legal defenses as part of the negotiation process. Thus, *Kolodner, Telford*, and *Cromwell* are distinguishable from this case because the respondents in those cases used legal tactics and methods during negotiations to effect results for their clients. *See Cincinnati Bar Assn. v. Foreclosure Solutions, L.L.C.*, 123 Ohio St.3d 107, 2009-Ohio-4174, 914 N.E.2d 386, ¶ 26 (noting that advising debtors of their legal rights and the terms and conditions of settlement in negotiations to avoid pending foreclosure or other collection proceedings constituted the unauthorized practice of law in both *Kolodner* and *Telford*).

{¶ 12} Indeed, the board's apparent view that our statement in *Kolodner* amounts to a per se rule that any attempt at settling debts on behalf of another is the practice of law is both incorrect and inconsistent with our later pronouncement in *Cleveland Bar Assn. v. CompManagement, Inc.,* 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, ¶ 59-60. This court concluded in *CompManagement* that the respondents—nonattorneys who appeared in a representative capacity before the Industrial Commission and the Bureau of Workers' Compensation in conformity

with an Industrial Commission resolution—did not engage in the unauthorized practice of law when they negotiated workers' compensation claims on behalf of employers. 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, ¶ 59-60. Our decision was based on the fact that the respondents did not use legal devices or tactics in assisting their clients. *Id.* at ¶ 52-62. As we explained in the opinion, the respondents' actions consisted of taking a figure already approved by the employer and presenting it to the claimant to be accepted or rejected; the respondents did not engage in any back-and-forth negotiation, nor did they make any legal determinations in presenting the settlement figure to the claimant. *Id.* Based on those facts, we observed that the respondents "merely operate[d] as a messenger, something that hardly require[d] legal skill." *Id.* at ¶ 59. We further stated in a footnote:

> The facts of this case remove it entirely from the purview of * * * *Cromwell* * * *, cited by the board in support of its recommendation. The individual in *Cromwell* represented parties in personal injury suits, including conducting settlement negotiations with insurance companies and advising clients of their legal rights. The sort of settlement negotiation involved in *Cromwell* does not exist in this case.

*Id.* at ¶ 59, fn. 20. *CompManagement* thus established two things: first, a person may negotiate a debt on behalf of another without practicing law and second, whether a person engages in the practice of law while negotiating a debt depends on whether that person's actions include the rendering of legal services (e.g., giving legal advice, drafting legal documents, raising legal defenses).

## C. Respondents' Negotiations

{¶ 13} In his deposition, Watkins explained his business model. He stated that he, through Watkins Global, engages in the act of business mediation. When asked what he does for his clients, Watkins explained that after becoming familiar with the facts of a client's case he asks the client how much it can pay on the debt, either immediately or in installments, and then relays that amount back to the creditor or creditor's counsel. Watkins explained that if the creditor accepts the amount as payment in full or agrees to be paid in installments, then he relies on the attorney representing the creditor to prepare a document memorializing the conversation and the agreement. If the payback amount is rebuffed, Watkins stated, he refunds any money paid up-front by his client.

{¶ 14} Watkins explained that he negotiates based on the age of the debt, how long the creditor has been pursuing the debt, and what the debtor can pay. He makes an offer to the creditor and then leaves it up to the creditor to accept the offer or to make a counteroffer. Watkins further testified that he believed his services were valuable to his clients because it allowed them to focus on running their businesses and other matters of importance instead of having to respond to calls from creditors. He explained that in his experience it can be easier for a representative of a debtor to contact a creditor because the interaction can be less confrontational. Specifically, he stated that "what normally happens in a case * * * the person who's being chased, they normally become very insecure and they really can't communicate that well because of the situation they're in. So I kind of help facilitate that * * *."

{¶ 15} Nothing about this behavior involves the rendering of legal services. Like the respondents in *CompManagement*, respondents' actions in this matter did not require legal skill. *See* 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, at ¶ 59. Although Watkins engaged in some back-and-forth negotiations, he functioned primarily as a messenger—he presented the creditor with an amount that

the debtor could pay and asked the creditor to consider accepting it as payment in full. If there was a counteroffer, he would relay that offer to his client and let the client draw its own conclusions.

### D. Allegations of Advising and Counseling Clients

{¶ 16} In addition to finding that respondents committed the unauthorized practice of law by negotiating debt settlements on behalf of others, the board also found that respondents engaged in the unauthorized practice of law by advising and counseling their clients in matters related to the law. The complaint alleged that respondents committed the unauthorized practice of law in 31 instances, but we can find only one instance in which relator has shown that Watkins provided legal advice and counsel to a client. That matter involves Watkins's representation of Trinity Baptist Church.

### i. Trinity Baptist Church

{¶ 17} In June 2012, Trinity Baptist Church hired Watkins, in his capacity as an employee of Watkins Global, to represent it in a mortgage foreclosure matter with PNC Bank. By the time Watkins became involved in the action, the bank had secured a final judgment in foreclosure and the relevant property was set to be auctioned. Trinity executed a third-party authorization form authorizing Watkins to discuss all information regarding the loan with PNC's counsel and engage in negotiations on Trinity's behalf. The authorization form listed Trinity as the borrower on the mortgage and another person, identified by name with the qualifier "deceased" appearing thereafter, as a co-borrower. According to Watkins's testimony, he recommended to PNC that the matter "need[ed] to be mediated instead of litigated" and advised Trinity that it "try to find a solution before [the matter got] out of hand." When the bank offered to accept payment in the amount of $6,227 to reinstate the mortgage, Watkins advised the church to accept the offer and begin raising funds to pay the bank. However, before any payment could be

arranged, the bank, through its counsel, rescinded its offer to reinstate the mortgage in the following letter:

> The offer set forth in my letter to you dated July 5, 2012 which quoted and would have permitted Trinity Baptist Church to reinstate the mortgage loan which is the subject of the foreclosure action referenced above is hereby rescinded. Contrary to what was indicated in the third party authorization which you provided to me, Trinity Baptist Church is not the borrower and did not execute the note in favor of PNC Bank. As a result Trinity Baptist Church cannot reinstate the loan. Accordingly the offer of reinstatement is again hereby rescinded.

{¶ 18} We find this evidence sufficient to conclude that Watkins did offer legal advice and counsel in his actions on behalf of Trinity Baptist Church. Not only did Watkins make a legal recommendation to creditor's counsel that the matter needed to be resolved outside of the foreclosure proceedings but he also advised Trinity that it should raise the requested funds and make payment to the bank even though it was not the note holder. Evidence in the record further shows that prior to receiving the rescission letter, Watkins knew that Trinity may not have been the borrower on the mortgage and that he used this fact as leverage in his communications with the bank's counsel in order to get the bank to accept a reinstatement payment that was far less than what was owed. Specifically, at Watkins's deposition, relator asked, "And, as I understand it, one of the reasons why you were able to get this down to such a reasonable number is because, at least in your estimation, the church really shouldn't have owed on that debt. It was somebody else's debt * * *." Watkins responded, "Correct." Accordingly, we find

that Watkins used legal tactics in an effort to negotiate a better settlement for his client.

*ii. Representation of other clients*

{¶ 19} Contrary to the board's conclusions, we find that relator has failed to show that respondents provided legal advice or counseling to any of the remaining 30 clients. The board's conclusion that respondents gave legal advice and counsel to these clients appears to be based on nothing more than its finding that "Respondents described themselves as a 'firm' in their marketing materials" and that respondents stated in those materials that " 'negotiation is better than any long running litigation.' " This does not establish that respondents engaged in the practice of law. *See Disciplinary Counsel v. Palmer*, 115 Misc.2d 70, 74, 761 N.E.2d 717 (Bd.Unauth.Prac.2001) ("The practice of law involves the rendering of legal advice to an individual. Legal publications offering general advice or opinions do not purport to customize the advice to the particularized needs of the reader").

{¶ 20} As we have said before, "an allegation that an individual or entity has engaged in the unauthorized practice of law must be supported by either an admission or by other evidence of the specific act or acts upon which the allegation is based." *CompManagement*, 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, at ¶ 26. When, as in this case, the specific allegation is that respondents provided legal advice and counsel through statements made in marketing materials, it is incumbent upon relator to show, at a bare minimum, that each of the clients referred to actually received those materials. But none of the 31 clients received the suspect marketing materials, because the only marketing materials contained in the record are those sent by Jones, Marco & Stein—an entity that came into existence in August 2012 and ceased operating in October 2012 without ever having represented a single client.

{¶ 21} Looking beyond the board's findings, our independent review of the record establishes that Watkins did not name the clients referred to in Exhibit 1. Relator failed to provide evidence identifying the clients (other than Trinity Baptist Church) or what interactions respondents had with those clients beyond assisting them in debt settlements. On these facts, we cannot conclude that respondents gave legal advice or rendered any legal services to their remaining clients.

### E. Summary Judgment

{¶ 22} This matter was submitted to the board on relator's motion for summary judgment. "Summary judgment may be granted when properly submitted evidence, construed in favor of the nonmoving party, shows that the material facts in the case are not in dispute and that the moving party is entitled to judgment as a matter of law because reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party." *Ohio State Bar Assn. v. Heath*, 123 Ohio St.3d 483, 2009-Ohio-5958, 918 N.E.2d 145, ¶ 9; *see* Civ.R. 56(C). We find that relator has failed to satisfy the summary-judgment standard on all but one of its claims of the unauthorized practice of law. And although respondents failed to timely file a cross-motion for summary judgment, we further conclude that summary judgment should be granted in favor of respondents on the remaining claims. *See State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.*, 27 Ohio St.3d 25, 28, 500 N.E.2d 1370 (1986) ("While Civ.R. 56 does not ordinarily authorize courts to enter summary judgment in favor of a non-moving party," summary judgment in favor of the nonmovant may be proper, and does not prejudice due-process rights, when "all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law"). Granting partial summary judgment in favor of respondents is warranted under the specific facts of this case and the unique fact-finding role this court plays in matters involving the unauthorized practice of law.

{¶ 23} The undisputed evidence shows that respondent Jones, Marco & Stein operated for only a short period of time between August 2012 and October 2012, while never securing a client. Therefore Jones, Marco & Stein could not have had any involvement with the clients listed in Exhibit 1 and summary judgment is entered in its favor on all counts. Further, despite alleging in its complaint and summary-judgment motion that Watkins, as an employee of Watkins Global, provided legal advice and counsel to his clients, relator has failed in all but one instance to present evidence that he did so. Similarly, relator has failed to present evidence that shows that Watkins, while attempting to settle debts on behalf of his clients, took any action that constitutes the practice of law.

{¶ 24} Our role in cases involving the unauthorized practice of law is to conduct an independent review of the alleged misconduct, the evidence before the panel, the findings of fact and conclusions of law, and the recommendations of the panel and board. *Cleveland Metro. Bar Assn. v. Davie*, 133 Ohio St.3d 202, 2012-Ohio-4328, 977 N.E.2d 606, ¶ 33. From this we determine whether a respondent's conduct amounts to the unauthorized practice of law. *Id.* In essence, when it comes to allegations of the unauthorized practice of law, this court sits as both the ultimate finder of fact and the final arbiter of the law.

{¶ 25} After thoroughly reviewing the record, the evidence submitted on summary judgment, and the board's findings, we conclude that relator can prove that Watkins and Watkins Global engaged in the unauthorized practice of law in their representation of Trinity Baptist Church only. As the body empowered by Article IV, Section 2(B)(1)(g) of the Ohio Constitution to define the practice of law and render judgment accordingly, we enter summary judgment in favor of Watkins and Watkins Global on 30 of the 31 alleged instances of misconduct and enter summary judgment in favor of relator on the single instance involving Trinity Baptist Church.

**G. An Injunction and $1,000 Civil Penalty Are Warranted**

{¶ 26} Having found that Watkins and Watkins Global engaged in the unauthorized practice of law with regard to Trinity Baptist Church, we accept the board's recommendation that we enter an injunction prohibiting them from rendering legal advice or counsel to clients in the future and from engaging in all other acts constituting the unauthorized practice of law. We also accept the board's recommendation that we impose a civil penalty of $1,000, as authorized by Gov.Bar R. VII(8)(B).

{¶ 27} This court may impose a civil penalty of up to $10,000 per violation after considering the following factors: "(1) the degree of a respondent's cooperation during the investigation, (2) the number of times the respondent engaged in the unauthorized practice of law, (3) the flagrancy of the respondent's violations, (4) any harm that the violations caused to third parties, and (5) any other relevant factors, which may include the aggravating and mitigating circumstances identified in UPL Reg. 400(F)." *Disciplinary Counsel v. Ward*, 155 Ohio St.3d 488, 2018-Ohio-5083, 122 N.E.3d 168, ¶ 13, citing Gov.Bar R. VII(8)(B).

{¶ 28} The board found that Watkins and Watkins Global cooperated throughout the investigation and ceased engaging in business activities after receiving notice of relator's investigation. Although relator charged respondents with 31 violations, we can find only one instance in which Watkins and Watkins Global's actions amounted to the unauthorized practice of law. However, we find that the flagrancy of the violation warrants a penalty in this instance. Watkins and Watkins Global represented to the creditor's counsel that Trinity Baptist Church owed a debt that it did not owe and used legal tactics to negotiate a lower settlement. The record further shows that Watkins and Watkins Global charged and collected $2,500 from the church for services that amounted to the unauthorized practice of law. Nevertheless, it is not clear from the record before us whether Trinity Baptist

Church was harmed by those actions.[1]  Upon balancing these factors, we agree that a $1,000 penalty is warranted for the single violation.

### III. CONCLUSION

{¶ 29} We find that respondents Watkins and Watkins Global engaged in the unauthorized practice of law on only one occasion.  We enjoin respondents Watkins and Watkins Global from engaging in the unauthorized practice of law in the future, and we impose a civil penalty of $1,000 against these respondents, jointly and severally, pursuant to Gov.Bar R. VII(8)(B).  We also order Watkins and Watkins Global to give written notice to Trinity Baptist Church that they were found to have engaged in the unauthorized practice of law in their representation of the church in its foreclosure dispute with PNC Bank.  Watkins and Watkins Global shall give such notice, which shall include a copy of the court's opinion, to the church within 14 days of this order and shall provide to relator proof of that notice within 5 days after it is made.  If relator has not received proof of notice within 30 days of this order, then it shall file a motion to show cause pertaining to the failure to comply with this order.  Costs are waived.  Summary judgment is granted in favor of respondent Jones, Marco & Stein on all claims.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, and DONNELLY, JJ., concur.

DEWINE, J., concurs in part and dissents in part, with an opinion joined by KENNEDY, J.

_____

1. Although it is not clear to us whether Trinity Baptist Church was harmed by respondents' actions, if evidence that is not in the record before us shows otherwise, the church may be entitled to recover any damages it incurred under R.C. 4705.07. *See Greenspan v. Third Fed. S & L Assn.*, 122 Ohio St.3d 455, 2009-Ohio-3508, 912 N.E.2d 567, ¶ 19.

**DEWINE, J., concurring in part and dissenting in part.**

{¶ 30} The majority opinion rightly concludes that lawyers do not hold a monopoly on the negotiation of debts and, on that basis, holds that 30 of the 31 unauthorized-practice-of-law charges brought against Mario Watkins and Watkins Global Network, L.L.C., don't pass muster. I would go further and conclude that the Ohio State Bar Association failed to meet its burden in any of the 31 cases.

{¶ 31} Where I differ from the majority is in its conclusion that Watkins's efforts on behalf of Trinity Baptist Church violated our rules prohibiting the unauthorized practice of law. The majority finds a violation based on a few meager items in the record: First, Watkins advised the church to try to "find a solution before [the matter got] out of hand" and suggested that it "try to raise the needed funds" and accept a settlement offer from PNC Bank. Second, Watkins apparently indicated to the bank's attorney that the bank should "mediate" rather than litigate the dispute. Third, Watkins may have expressed to the bank's attorney that he didn't believe that the church should owe on the debt. No doubt, these are opinions with legal implications. But as I explain, merely expressing an opinion with legal implications is not the practice of law. That Watkins voiced such opinions in the course of providing his debt-negotiation service for the church is really all that the bar association has been able to show. That's just not good enough for the association to meet its burden of proving that Watkins violated our rules.

*Our Authority to Regulate the Practice of Law*

{¶ 32} The Ohio Constitution grants this court the authority to regulate matters of attorney admission, discipline, and "other matters related to the practice of law." Article III, Section 2(B)(1)(g) of the Ohio Constitution. This grant comes with an implicit limitation: what cannot plausibly be considered the practice of law is beyond our authority to proscribe.

{¶ 33} Indeed, to unduly extend the boundaries of what constitutes the practice of law risks infringing upon the rights of nonlawyers to pursue their own

chosen professions. The very first provision of the Ohio Constitution promises all Ohioans "certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety." Article I, Section I of the Ohio Constitution. We have found among the liberty and property interests protected by this provision a right to pursue a profession of one's choosing. *State v. Williams*, 88 Ohio St.3d 513, 527, 728 N.E.2d 342 (2000). Though the state may regulate in this area to protect societal interests, such regulation must "bear[] a real and substantial relation to the public health, safety, morals, or general welfare" and "not be arbitrary or unreasonable." *Id.* at 524, citing *Benjamin v. Columbus*, 167 Ohio St. 103, 110, 146 N.E.2d 854 (1957). Similarly, the United States Supreme Court has placed the right of an individual to pursue and continue in a chosen occupation among the liberty interests protected by the Fourteenth Amendment to the United States Constitution, though such right may be subject to reasonable government regulation. *See, e.g.*, *Conn v. Gabbert*, 526 U.S. 286, 291-292, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *Dent v. West Virginia*, 129 U.S. 114, 121-122, 9 S.Ct. 231, 32 L.Ed. 623 (1889).

{¶ 34} Our authority to regulate the practice of law is further limited by the associational and free-speech rights guaranteed by the First Amendment to the United States Constitution and Article I, Section 11 of the Ohio Constitution. *See generally Bates v. State Bar of Arizona*, 433 U.S. 350, 382, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). Speech does not receive diminished First Amendment protection simply because it is uttered by an individual subject to a state licensing and regulatory scheme. *Natl. Inst. of Family & Life Advocates v. Becerra*, ___ U.S. ___, 138 S.Ct. 2361, 2371-2372, 201 L.Ed.2d 835 (2018). And where a government regulation of conduct places incidental restrictions on speech, those regulations must, at a minimum, serve an important governmental interest. *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978);

*Lorain Cty. Bar Assn. v. Zubaidah*, 140 Ohio St.3d 495, 2014-Ohio-4060, 20 N.E.3d 687, ¶ 40.

{¶ 35} Finally, it is worth noting that the Ohio State Bar Association, a professional association of lawyers, is acting as the prosecutor in this case. Without question, such a role is provided for in our Rules for the Government of the Bar and is consistent with the historical role played by the bar and other professional associations. Nevertheless, because "anticompetitive activities by lawyers may exert a restraint on commerce," *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 778, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), our supervision is required in this area. Indeed, absent "active supervision," a regulatory scheme, such as the one for attorneys, that relies upon "active market participants" may violate federal antitrust laws. *See North Carolina State Bd. of Dental Examiners v. Fed. Trade Comm.*, ___ U.S. ___, 135 S.Ct. 1101, 1112, 191 L.Ed.2d 35 (2015). *Compare Goldfarb.*

{¶ 36} At a minimum, these constraints highlight the need for care in this area. We must be mindful to interpret and apply our rules in a manner that is reasonable, that provides fair notice to nonlawyers, that is adequately connected to the legitimate purpose of protecting the public from incompetent or unethical legal representation, and that curtails speech only in a way that is reasonably necessary to accomplish this goal.

*The Practice of Law*

{¶ 37} Our rules prohibit "[t]he rendering of legal services for another by any person not admitted to practice in Ohio." Gov.Bar R. VII(2)(A)(1). The rules, however, do not define the term "legal services." Nor has this court ever provided a comprehensive definition of "legal services." What we have said is that legal services paradigmatically include things like appearing in court on someone else's behalf, preparing documents for use in legal actions, preparing legal instruments and contracts that secure another's rights, and providing legal advice and counsel to clients. *See Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 28,

193 N.E. 650 (1934). We have also recognized that the regulation of the unauthorized practice of law must be done in a common-sense manner for the purpose of protecting the public and in a way that doesn't impose impractical and unnecessary technical constraints. *Henize v. Giles*, 22 Ohio St.3d 213, 218, 490 N.E.2d 585 (1986), citing *Cowern v. Nelson*, 207 Minn. 642, 647, 290 N.W. 795 (1940).

{¶ 38} The majority opinion concludes that Watkins's aforementioned statements involve legal advice and counsel and hence constitute the unauthorized practice of law. But this court should be careful to not too quickly draw the conclusion that a person's legally laden opinions count as the practice of law. As should be obvious, many people express opinions with legal implications in a great many situations. A journalist trying to get access to public records might tell a city-council member that the law is on her side. Hospital employees might discuss what practices are necessary to comply with privacy laws. And one nonlawyer citizen might tell another that what he is doing is against the law and that she will take legal action if he keeps it up. But this court has never said that activities like these count as the practice of law. And for good reason. None of these activities plausibly count as the provision of *legal services* that pose a threat to the public if not constrained.

{¶ 39} To be sure, I don't think that the majority disagrees with any of this. But a corollary of the principle that one doesn't violate our rules merely by voicing an opinion with legal implications is that one doesn't violate our rules just because one offers such an opinion in the course of providing another service to a client. Again, this should be plain. Many professions—accountants, human-resources representatives, and real-estate agents come to mind—require practitioners to provide advice on matters that have legal implications for their clients. But an accountant does not engage in the unauthorized practice of law just because she advises a client about tax benefits and a human-resources representative doesn't

engage in the unauthorized practice of law by teaching a sexual-harassment seminar on the requirements of Title VII of the Civil Rights Act. The fact that those services, like a great many other services, require the exercise of judgment that has legal implications doesn't change that analysis. The law infuses a great many parts of life. Lawyers don't have a monopoly on something just because the law touches it.

*The Record Does Not Support the Unauthorized-Practice-of-Law Finding in the Trinity Baptist Church Matter*

{¶ 40} The majority opinion seems to conclude that because Watkins offered a few opinions with legal implications in the course of providing a debt-negotiation service to Trinity Baptist Church, he was providing legal services. But a look at the record support for the specific items on which the majority opinion relies leads me to conclude that the bar association came nowhere close to meeting its burden of showing an unauthorized-practice violation. Watkins's suggestion to the church that it try to find a solution and that it accept a settlement offer is certainly an opinion with legal implications. But that looks more like workaday business advice involving a rather simple cost-benefit analysis. Litigation is expensive, and in a great many cases it doesn't require legal expertise to decide that it may not make financial sense.

{¶ 41} The majority opinion also infers that Watkins used his belief that the church shouldn't have to pay the debt as leverage in his negotiation with the bank's attorney. As a preliminary matter, the record developed by the bar association here is pretty scanty, and it's not clear exactly what Watkins said to the attorney. At the deposition, Watkins was asked whether he was able to get a relatively low settlement offer from the bank because "in [his] estimation, the church really shouldn't have owed on the debt." Watkins replied, "Correct. They inherited the debt, which makes it very bad, because when you inherit something in a surprise manner it's never good unless whatever you inherit, it happens to be good." Watkins's statement could easily be construed as expressing a moral judgment

rather than a legal one. But even if we assume that Watkins was expressing a legal opinion to the bank's attorney, this sort of isolated statement is hardly the sort of activity that our rules are designed to protect against. Again, our rules prohibiting the unauthorized practice of law have a point—"to protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40. Watkins wasn't representing the bank or advising the bank in any way—to the contrary, the bank was represented by sophisticated legal counsel—and it is difficult to see how Watkins's isolated statement to the bank's attorney poses the sort of threat that our rules seek to curtail.

{¶ 42} Indeed, none of the cases discussed in the majority opinion and mentioned by the Board of Professional Conduct support the conclusion that Watkins's statements were sufficient to violate our rules. In each of those cases, the respondent did substantially more. For instance, in *Cincinnati Bar Assn. v. Telford*, the respondent involved himself in ongoing debt-collection proceedings before a court by erroneously advising a client about potential legal liability if he didn't settle a lawsuit, informing another attorney that he should remove a party from a lawsuit, and sending a proposed settlement offer for the lawsuit to the plaintiff's counsel. 85 Ohio St.3d 111, 113, 707 N.E.2d 462 (1999). In *Cincinnati Bar Assn. v. Cromwell*, the respondent represented clients with personal-injury claims in settlement negotiations with insurance companies. In doing so, he provided substantive legal advice to those clients about their legal rights. 82 Ohio St.3d 255, 255, 695 N.E.2d 243 (1998). In *Ohio State Bar Assn. v. Kolodner*, the respondent held himself out as an attorney. 103 Ohio St.3d 504, 2004-Ohio-5581, 817 N.E.2d 25, ¶ 3. And in *Disciplinary Counsel v. Foreclosure Alternatives, Inc.*, the respondent offered "to manage the defense of * * * foreclosure actions while negotiating with the lenders." 127 Ohio St.3d 455, 2010-Ohio-6257, 940 N.E.2d

971, ¶ 1. In the process, the respondent provided substantive legal advice in the context of ongoing foreclosure proceedings, including advice about bankruptcy. *Id.* at ¶ 24. The few statements that Watkins is alleged to have made here fall far short of the sorts of activities identified in these cases.

{¶ 43} All that the bar association has demonstrated is that Watkins provided a debt-negotiation service during which he voiced a few ancillary opinions with legal implications. That's not good enough. This is not to say that Watkins didn't cross the line so that his activities on behalf of the church violated our rules. Perhaps he did. But whether he did is not something for this court to speculate about; it is something that the bar association has the burden to prove. And the record doesn't come anywhere close to supporting that conclusion. Indeed, once one rejects the bar association's erroneous assumption that any debt negotiation is the practice of law, its entire case against Watkins crumbles. That was the premise that guided the bar association's entire inquiry, and denying it means that there just isn't any support for the conclusion that Watkins violated our rules. Though I agree with the majority opinion's analysis finding that 30 of the 31 cases did not involve the unauthorized practice of law, I dissent with regard to the 1 violation that the majority opinion does find.

KENNEDY, J., concurs in the foregoing opinion.

─────────────────

Plunkett Cooney, Alvand A. Mokhtari, and Eugene Whetzel, Bar Counsel, for relator.

Mario Watkins, pro se.

─────────────────────