[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Smidt*, Slip Opinion No. 2020-Ohio-3258.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3258

DISCIPLINARY COUNSEL *v.* SMIDT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Smidt*, Slip Opinion No. 2020-Ohio-3258.]**

*Unauthorized practice of law—Preparing and negotiating modification of loan that was subject of pending foreclosure proceeding—Permanent injunction issued and civil penalty imposed.*

(No. 2019-0827—Submitted April 8, 2020—Decided June 11, 2020.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 18-01.

_____

**Per Curiam.**

{¶ 1} In an April 2018 complaint, relator, disciplinary counsel, charged respondent, Melissa M. Smidt, d.b.a. A Perfect Solution, with engaging in the unauthorized practice of law in Ohio. The complaint alleged that Smidt, who is not licensed to practice law in Ohio, agreed to assist Deborah Krantz with a

foreclosure matter that was pending in the Franklin County Court of Common Pleas and sought to modify the terms of the subject loan during the pendency of the lender's foreclosure proceeding. The complaint further alleged that although Smidt represented that she undertook those actions as a paralegal under the supervision of an attorney, the attorney was unaware of and did not participate in Smidt's representation of Krantz.

{¶ 2} Smidt was served with a copy of relator's complaint by certified mail, but she did not file an answer. On August 16, 2018, relator filed a motion for default. Smidt also did not respond to relator's motion, which states that it was served on her by ordinary U.S. mail and by e-mail.

{¶ 3} A three-member panel of the Board on the Unauthorized Practice of Law granted relator's motion for default on October 10, 2018. The panel also submitted to the board a report finding that relator's motion satisfied the requirements of Gov.Bar R. VII(7)(B)(1) through (6) and that Smidt had engaged in the unauthorized practice of law. The panel recommended that Smidt be enjoined from engaging in additional acts of the unauthorized practice of law and be ordered to pay a civil penalty of $5,000 for her violation. The board considered the panel's report at its March 22, 2019 meeting and adopted its findings and recommendations.

{¶ 4} After reviewing the record, we agree that Smidt engaged in the unauthorized practice of law in Ohio and that an injunction and civil penalty are warranted.

### Smidt's Conduct

{¶ 5} The evidence submitted with relator's motion for default shows that Smidt operated A Perfect Solution in the Bay Village, Ohio area. The business purported to be a "knowledgeable, fully committed professional company preparing Loan Modifications and Bankruptcy Petitions under the direct supervision of Consumer Bankruptcy Attorneys." Although Smidt previously had

2

been employed by an attorney as a contract paralegal assistant, she was not licensed to practice law in Ohio.

{¶ 6} In March 2015, Deborah Krantz hired Smidt and paid her a flat fee of $1,000 to prepare and negotiate the modification of a loan that was the subject of a pending foreclosure proceeding—despite the fact that Krantz already had an attorney representing her in the foreclosure. In the fee agreement, Smidt stated that she would prepare and negotiate the loan modification, "along with, attending any/all mediation hearings, written statements, telephone conferences."

{¶ 7} During the course of the representation, Smidt sent two letters to Krantz's mortgage lender on the letterhead of attorney J. Norman Stark. In the first letter, Smidt identified herself as a paralegal and "the legal representative appointed to act or speak on behalf of Ms. Deborah Krantz, for the limited purpose of negotiating a loan modification." In the second letter, Smidt related the hardships that had prevented Krantz from satisfying her loan obligations and opined that Krantz was an excellent candidate for a loan modification.

{¶ 8} Smidt later informed Krantz that she had spoken with one of the attorneys representing the lender and implored him to stay the execution of the sale in the foreclosure proceeding to give her time to submit a loan-modification packet. She also e-mailed Krantz's foreclosure attorney and informed him that she had spoken with the underwriter for Krantz's loan but that the lender needed more time to make a loan-modification offer. To that end, Smidt suggested that the attorney prepare and file—with her help—a motion to stay execution of the judgment, a motion to return the foreclosure case to mediation, or a motion for relief from judgment under Civ.R. 60(B) to delay the foreclosure proceeding. Smidt also informed the attorney that she had spoken with the supervisor of the court's mediation department and that he had told her that although the foreclosure case had been referred to mediation, the case had been returned to the court's docket because no one had appeared for the scheduled mediation. Smidt

opined that the judge would likely deny a request to return the case to mediation but stated, "I would place a strong argument for a return to mediation as a full loan modification of over 100 pages was provided to the Lender and currently, we're in the middle of negotiations with the Lender."

{¶ 9} Smidt's efforts to delay the foreclosure proceedings were not successful, and the court confirmed the sheriff's sale of Krantz's real property on June 19, 2015. On July 1, 2015, Krantz terminated Smidt's services and requested the return of her documents and a full refund of her fee, but Smidt did not comply with either request.

{¶ 10} In her correspondence with relator—before she stopped participating in this matter—Smidt claimed that the actions she took on behalf of Krantz were taken under the supervision of attorney Stark. She also furnished relator with several documents, including the two letters she had sent to Krantz's mortgage lender on Stark's letterhead.

{¶ 11} In a March 2017 affidavit, however, Stark denied that he had represented Krantz and stated that he had received no fee or retainer from her. He also stated that he had terminated Smidt's employment as a "paralegal assistant" due in part to her unauthorized practice of law and her unauthorized use of his law-office letterhead. Stark averred that after he terminated Smidt's employment, she continued to use his letterhead without his knowledge or consent. Although he repeatedly demanded that Smidt cease and desist from that conduct, he received no response from her. There is no evidence that any other licensed attorney was supervising Smidt's provision of legal services.

{¶ 12} Based on relator's evidence, the board found that Smidt had engaged in the unauthorized practice of law by attempting to represent Krantz in her pending foreclosure matter and by contacting Krantz's mortgage lender in an attempt to modify the terms of the loan.

**Smidt Engaged in the Unauthorized Practice of Law**

{¶ 13} This court has original jurisdiction over the admission to the practice of law in Ohio, the discipline of persons so admitted, and "all other matters relating to the practice of law," Article IV, Section 2(B)(1)(g), Ohio Constitution, which include the regulation of the unauthorized practice of law. *Royal Indemn. Co. v. J.C. Penney Co., Inc.*, 27 Ohio St.3d 31, 34, 501 N.E.2d 617 (1986); *Greenspan v. Third Fed. S. & L. Assn.*, 122 Ohio St.3d 455, 2009-Ohio-3508, 912 N.E.2d 567, ¶ 16. The purpose of that regulation is to "protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40.

{¶ 14} We have defined the unauthorized practice of law to include both the "rendering of legal services for another" and the "[h]olding out to the public or otherwise representing oneself as authorized to practice law in Ohio" by any person who is not authorized to practice law under our rules. Gov.Bar R. VII(2)(A)(1) and (4). Although unlicensed persons may provide certain types of assistance in the rendering of legal services, "the individual's actions must be closely supervised and approved by a licensed attorney." *Disciplinary Counsel v. Casey*, 138 Ohio St.3d 38, 2013-Ohio-5284, 3 N.E.3d 168, ¶ 10. In the absence of such supervision, the provision of legal services by an unlicensed person constitutes the unauthorized practice of law. *Id.*

{¶ 15} We have held that nonlawyers engage in the unauthorized practice of law "by attempting to represent the legal interests of others and advise them of their legal rights during settlement negotiations," *Cincinnati Bar Assn. v. Foreclosure Solutions, L.L.C.*, 123 Ohio St.3d 107, 2009-Ohio-4174, 914 N.E.2d 386, ¶ 25, particularly when those nonlawyers are "attempting to advise debtors of their legal rights and the terms and conditions of settlement in negotiations to

avoid pending foreclosure or other collection proceedings," *id.* at ¶ 26, citing *Ohio State Bar Assn. v. Kolodner*, 103 Ohio St.3d 504, 2004-Ohio-5581, 817 N.E.2d 25, and *Cincinnati Bar Assn. v. Telford*, 85 Ohio St.3d 111, 707 N.E.2d 246 (1999).

{¶ 16} Recently, in *Ohio State Bar Assn. v. Watkins Global Network, L.L.C.*, __ Ohio St.3d __, 2020-Ohio-169, __ N.E.3d __, ¶ 10, we clarified that there is no per se rule that any nonlawyer who negotiates a debt settlement on behalf of another engages in the unauthorized practice of law. Instead, we held that "whether a person engages in the unauthorized practice of law turns on the specific actions a person takes while attempting to negotiate a settlement and whether those actions constitute the rendering of legal services," *id.*, such as giving legal advice, drafting legal documents, or asserting legal defenses as part of the negotiation process, *id.* at ¶ 11.

{¶ 17} Watkins represented the interests of a debtor in loan negotiations with a bank during the pendency of a mortgage foreclosure action in which the bank had secured a final judgment in foreclosure and the relevant property was scheduled to be auctioned. *Id.* at ¶ 17. In that representation, he engaged in the unauthorized practice of law by giving legal advice to his client, by making a legal recommendation to an attorney in the foreclosure proceeding, and by using legal tactics in an effort to negotiate a better settlement for his client. *Id.* at ¶ 17-18.

{¶ 18} Like Watkins, Smidt represented Krantz in a foreclosure proceeding in which the court had already issued a final judgment of foreclosure and scheduled a sheriff's sale. Although the board found no evidence that Smidt gave legal advice directly to any of her "clients," Smidt gave litigation advice to Krantz's counsel of record in an effort to delay the foreclosure proceeding and to buy more time to negotiate a modification of the loan with Krantz's lender. She also contacted a court representative on Krantz's behalf.

{¶ 19} On these facts, we accept the board's finding that Smidt engaged in the unauthorized practice of law.

**An Injunction and Civil Penalty Are Warranted**

{¶ 20} Because we have found that Smidt engaged in the unauthorized practice of law, we adopt the board's recommendation that we issue an injunction prohibiting her from further engaging in the unauthorized practice of law in Ohio.

{¶ 21} The board also recommends that we impose a civil penalty of $5,000 pursuant to Gov.Bar R. VII(8)(B), which instructs us to consider (1) the degree of a respondent's cooperation during the investigation, (2) the number of times the respondent engaged in the unauthorized practice of law, (3) the flagrancy of the respondent's violations, (4) any harm that the violations caused to third parties, and (5) any other relevant factors, which may include the aggravating and mitigating circumstances identified in UPL Reg. 400(F).

{¶ 22} Smidt's participation in relator's investigation was almost nonexistent. She provided a partial reply to one of relator's letters of inquiry, but she did not answer relator's complaint, respond to its motion for default, or otherwise appear in this proceeding.

{¶ 23} Although relator charged Smidt with engaging in the unauthorized practice of law only in the Krantz matter, he did submit evidence that Smidt had engaged in similar instances of the unauthorized practice of law with respect to other persons. Moreover, Smidt's conduct was flagrant. Smidt's use of the designations "ACP" (Advanced Certified Paralegal) and "RP" (Registered Paralegal) in the signature line of her correspondence indicates that she is a trained paralegal. Therefore, she would have received instruction regarding the actions she was permitted and not permitted to take as a paralegal. She not only chose to ignore those instructions but also engaged in the unauthorized use of attorney Stark's law-office letterhead—even after receiving his demand to cease and desist. Her intentional and deceitful misuse of Stark's letterhead

demonstrates her knowledge that in the absence of direct supervision by a licensed attorney, the actions she took on behalf of Krantz constituted the unauthorized practice of law.

{¶ 24} In light of these aggravating factors, we agree that a civil penalty of $5,000 is warranted for Smidt's single instance of the unauthorized practice of law.

### Conclusion

{¶ 25} Accordingly, we enjoin Melissa M. Smidt from engaging in further acts constituting the unauthorized practice of law in Ohio. We also order Smidt to pay a civil penalty of $5,000. Costs are taxed to Smidt.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

DEWINE, J., concurs in judgment only, with an opinion joined by KENNEDY, J.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 26} I agree with the majority that Melissa Smidt violated our rules prohibiting the unauthorized practice of law. I have no problem reaching that conclusion, because her actions, especially her use of an attorney's letterhead, falsely conveyed that she was working with an attorney. And she persisted in this conduct despite being told by that attorney to stop using the letterhead. Her behavior would mislead a reasonable person about the nature of the services Smidt was offering and therefore violated our rules.

{¶ 27} But I wish to highlight a few points of departure from the majority. First, as I have previously explained, merely offering an opinion with legal implications is not, on its own, sufficient to count as the unauthorized practice of law. *See Ohio State Bar Assn. v. Watkins Global Network, L.L.C.*, __ Ohio St.3d

__, 2020-Ohio-169, __ N.E.3d __, ¶ 38-39 (DeWine, J., concurring in part and dissenting in part). Rather, to count as the practice of law, the behavior must more closely resemble that which is paradigmatic of what attorneys do. And in making this assessment, we must be mindful that the purpose of the unauthorized-practice-of-law rules is to protect the public, but in a way that doesn't impose impractical and unnecessary technical constraints. *See Henize v. Giles*, 22 Ohio St.3d 213, 218, 490 N.E.2d 585 (1986), citing *Cowern v. Nelson*, 207 Minn. 642, 647, 290 N.W. 795 (1940).

{¶ 28} To hastily conclude that someone has engaged in the unauthorized practice of law simply because she has voiced a legal opinion runs the risk of unnecessarily and improperly burdening the activities of many people, including accountants, human-resource representatives, and real-estate agents, whose jobs require them to opine on legally relevant matters. It also risks running afoul of various constitutional protections and antitrust limitations. *See Watkins Global* at ¶ 33-35 (DeWine, J., concurring in part and dissenting in part).

{¶ 29} Second, I do not agree that debt negotiation, even in the context of a foreclosure, is necessarily the practice of law. To find that someone has engaged in the practice of law depends on first determining that she provided legal services—that is, engaged in behavior that is paradigmatically the exclusive work of lawyers. Insofar as the majority seems to suggest that debt negotiation, even in the context of a foreclosure, is presumptively the practice of law, I believe that it errs.

{¶ 30} Third, like it did in *Watkins Global*, this court has again suggested that legal opinions expressed by a nonattorney to an attorney count as the unauthorized practice of law. While that may be correct in rare instances, we ought to be cautious about reaching such a conclusion and not forget the point of our rules, which is protect the public. One can reasonably presume that in most cases, attorneys can safely form their own views about the law and legal strategy,

regardless of what opinions a nonattorney might express. In most cases, there will be little more reason to think that expressing a legal opinion to an attorney is the practice of law than to think that expressing play-calling opinions to Woody Hayes is coaching football.

{¶ 31} So, while I believe that Smidt violated our rules, elements of the majority's analysis suggest an overly broad understanding of what might count as the unauthorized practice of law. For that reason, I concur in judgment only.

KENNEDY, J., concurs in the foregoing opinion.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

_____