[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Pro-Net Fin., Inc.*, Slip Opinion No. 2022-Ohio-726.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-726

OHIO STATE BAR ASSOCIATION *v.* PRO-NET FINANCIAL, INC., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Pro-Net Fin., Inc.*, Slip Opinion No. 2022-Ohio-726.]**

*Unauthorized practice of law—The general provision of Civ.R. 8(B) that averments in a pleading are admitted when not denied in a responsive pleading has no application in default proceedings involving the unauthorized practice of law—The record does not contain sufficient evidence to support a finding that respondents engaged in the unauthorized practice of law—Charges of unauthorized practice of law dismissed.*

(No. 2016-1913—Submitted November 10, 2021—Decided March 15, 2022.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 2012-05.

————————————

**Per Curiam.**

{¶ 1} In a six-count amended complaint filed with the Board on the Unauthorized Practice of Law on November 14, 2013, relator, Ohio State Bar Association, alleged that respondents, Nationwide Support Services, Inc. ("Nationwide"), Pro-Net Financial, Inc., and Pro-Net's president, Andrew J. Bloom (the "Pro-Net respondents"), had engaged in the unauthorized practice of law in Ohio by counseling Ohio debtors and negotiating debt settlements on behalf of six Ohio debtors.[1]

{¶ 2} In an August 26, 2021 revised report, the board found that Nationwide and the Pro-Net respondents had engaged in the unauthorized practice of law by providing advice and counsel to six Ohio customers regarding their debts and negotiating, drafting, and reviewing settlement agreements on behalf of those customers. For the reasons that follow, we find that there is insufficient evidence in the record to support the board's findings that Nationwide and the Pro-Net respondents engaged in the unauthorized practice of law in Ohio. Accordingly, we dismiss this case.

### Procedural History

{¶ 3} After relator filed its amended complaint, the Pro-Net respondents entered into stipulations of fact and agreed that they had engaged in the unauthorized practice of law in Ohio.

{¶ 4} Although the amended complaint was served on Nationwide by certified mail, Nationwide did not answer it or otherwise participate in the proceedings before the board. Consequently, relator filed a motion for default against Nationwide.

{¶ 5} Relying primarily upon the stipulations of the Pro-Net respondents and Civ.R. 8(D), which provides that "[a]verments in a pleading to which a

---

1. Although the amended complaint also charged Marissa Bloom with engaging in the unauthorized practice of law, relator voluntarily dismissed the charges against her.

responsive pleading is required * * * are admitted when not denied in the responsive pleading," a panel of the board found that the Pro-Net respondents *and* Nationwide had engaged in the unauthorized practice of law. The panel recommended that the respondents be enjoined from performing legal services in Ohio and that we assess civil penalties of $60,000 against Nationwide and $12,000 jointly and severally against the Pro-Net respondents. The board adopted that report and recommendation.

{¶ 6} In December 2017, we remanded the matter to the board "for supplementation of the record in accordance with the evidentiary standard set forth in former Gov.Bar R. VII(7)(B)(2) (now Gov.Bar R. VII(12)(B)(2)), which requires motions for default in unauthorized-practice-of-law proceedings to be supported by sworn or certified documentary prima facie evidence in support of the allegations of the complaint. 151 Ohio St.3d 1478, 2017-Ohio-9185, 87 N.E.3d 1274.

{¶ 7} In July 2019, relator and counsel for the Pro-Net respondents resubmitted their agreed stipulations to the board, along with ten exhibits identified therein—including some of the documents that had previously been submitted in support of relator's motion for default against Nationwide. Relator and the Pro-Net respondents also submitted affidavits from their counsel detailing how those exhibits had been authenticated and averring that relator and the Pro-Net respondents agreed that all the exhibits submitted with the stipulations "are admissible for purposes of any and all matters regarding this case."

{¶ 8} A panel of the board found that those exhibits had been properly authenticated and admitted into evidence, and it affirmed the report that was originally filed with this court on December 30, 2016.[2] On August 26, 2021, the

---

2. For purposes of this opinion, we assume—without deciding—that these documents have been properly authenticated, and we decide this case on the merits. *See State ex rel. Montgomery v. R & D Chem. Co.*, 72 Ohio St.3d 202, 204, 648 N.E.2d 821 (1995), quoting *DeHart v. Aetna Life Ins. Co.*, 69 Ohio St.2d 189, 193, 431 N.E.2d 644 (1982) (" 'Fairness and justice are best served when a court disposes of a case on the merits' ").

board submitted its revised final report to this court, once again finding that Nationwide and the Pro-Net respondents had engaged in the unauthorized practice of law by counseling, advising, and negotiating debts on behalf of the six identified Ohio customers.

### The Board's Findings of the Unauthorized Practice of Law

{¶ 9} The board found that Pro-Net had been a closely held corporation that had been formed under the laws of California and that had done business in Ohio. Bloom, a California resident, was the sole shareholder and president of Pro-Net until the company ceased operation in August 2010. Pro-Net provided debt-negotiation services for customers in various states through its business relationship with Nationwide, which is also a California corporation. None of the respondents is an attorney licensed to practice law in the state of Ohio.

{¶ 10} In 2007, the Pro-Net respondents, without the benefit of legal counsel, entered into a contract with Nationwide. As Bloom understood the relationship, Pro-Net agreed to serve as a marketing entity, screening and enrolling customers in Nationwide's debt-negotiation program. Nationwide provided the enrollment materials that Pro-Net sent to prospective customers and managed the database in which it required Pro-Net to enter basic customer information. Once Pro-Net completed the data entry, Nationwide took over the customer's account and maintained complete control over the services that it provided. As Bloom explained it, Pro-Net's function was "to enroll customers and provide those enrollments to Nationwide for them to do everything else."

{¶ 11} Bloom stated that to effectuate this business relationship, Nationwide drafted a complex series of agreements through which customers provided a limited power of attorney to Pro-Net and Pro-Net provided a limited power of attorney to Nationwide. Under Nationwide's agreement with Pro-Net, Nationwide agreed to engage in debt-negotiation services as Pro-Net's agent. Thus, it appeared to customers and creditors that Pro-Net was providing the debt-

negotiation services when, according to Bloom, Nationwide was actually the exclusive provider of those services.

{¶ 12} Pro-Net acknowledged that it had had approximately 90 Ohio customers, including the six identified in relator's amended complaint. In addition, the Pro-Net respondents stipulated that from 2008 through 2010 they had rendered legal services to the six identified Ohio customers through Pro-Net's agent, Nationwide. Specifically, they stipulated that through the actions of Nationwide, they had counseled those customers and negotiated the resolution of the customers' debts with their creditors or counsel for their creditors. They also stipulated that they had rendered legal services through their agreement with Nationwide, because Nationwide had contacted counsel for one customer's creditors and represented that it was the customer's "attorney in fact" with the authority to represent him and negotiate on his behalf with regard to a disputed debt. In addition, the Pro-Net respondents stipulated that Nationwide charged another customer a $300 fee for, in part, referring him to an attorney. They further acknowledged that while acting on Pro-Net's behalf, Nationwide caused substantial harm to another customer by retaining funds that Nationwide had represented would be paid to her creditors.

{¶ 13} The board concluded that Pro-Net, Bloom, and Nationwide had engaged in the unauthorized practice of law by counseling, advising, and negotiating debts on behalf of the six identified Ohio customers.

## The Unauthorized Practice of Law

{¶ 14} The unauthorized practice of law is the rendering of legal services for another by any person not admitted or otherwise certified to practice law in Ohio. Gov.Bar R. VII(31)(J). This includes the " 'preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts.' " *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 28, 193 N.E. 650 (1934), quoting *People v. Alfani*, 227 N.Y. 334, 337-338, 125 N.E. 671 (1919). In *Ohio*

*State Bar Assn. v. Kolodner*, 103 Ohio St.3d 504, 2004-Ohio-5581, 817 N.E.2d 25, ¶ 15, we stated that the unauthorized practice of law also "includes representation by a nonattorney who * * * negotiates on behalf of an individual or business in the attempt to resolve a collection claim between debtors and creditors."

**{¶ 15}** But in *Ohio State Bar Assn. v. Watkins Global Network, L.L.C.*, 159 Ohio St.3d 241, 2020-Ohio-169, 150 N.E.3d 68, ¶ 10, we clarified that *Kolodner* did not enunciate a rule under which any person who negotiates a debt settlement on behalf of another without being licensed to practice law in the state of Ohio engages in the unauthorized practice of law. We found that such a per se rule would be incorrect and inconsistent with our later pronouncement in *Cleveland Bar Assn. v. CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, which established that (1) a person may negotiate a debt on behalf of another without practicing law and (2) whether a person engages in the practice of law while negotiating a debt depends on whether that person's actions include the rendering of legal services (e.g., giving legal advice, drafting legal documents, raising legal defenses). *Watkins Global* at ¶ 12. Ultimately, " 'an allegation that an individual or entity has engaged in the unauthorized practice of law must be supported by either an admission or by other evidence of the specific act or acts upon which the allegation is based.' " *Id.* at ¶ 20, quoting *CompManagement* at ¶ 26.

**{¶ 16}** Applying those precepts, we determined that two of the respondents in *Watkins Global*—a company and its sole owner—did not engage in the practice of law by presenting offers to their customers' creditors, leaving it up to the creditors to accept the offer or make a counteroffer, and relaying any counteroffer to the customer. *Id.* at ¶ 14-15. In contrast, we found that the same *Watkins Global* respondents did engage in the unauthorized practice of law when they advised and counseled a customer to make a payment on a real-property loan, even though the customer was not the borrower, and made a legal recommendation to the creditor's

counsel that the matter needed to be resolved outside of the foreclosure proceedings. *Id.* at ¶ 18.

{¶ 17} Under *Watkins Global*, the determination whether Nationwide and the Pro-Net respondents engaged in the unauthorized practice of law depends on the evidence of the *specific acts* that they undertook on behalf of their customers.

### Standard of Proof

{¶ 18} In most cases, Gov.Bar R. VII(12)(G) and (I) require proof by a preponderance of the evidence that a respondent has engaged in the unauthorized practice of law. Nationwide, however, is in default of answer and has not otherwise appeared in this proceeding. Although Civ.R. 8(D) generally provides that averments in a pleading are admitted when not denied in a responsive pleading, the Rules of Civil Procedure have limited application in proceedings regarding the unauthorized practice of law. Gov.Bar R. VII(12)(C) provides that in unauthorized-practice-of-law proceedings, "[t]he hearing panel shall follow the Rules of Civil Procedure and Rules of Evidence wherever practicable, *unless* a provision of [Gov.Bar R. VII] or Board hearing procedures and guidelines provide otherwise." (Emphasis added.) In addition, Gov.Bar R. VII(12)(B)(2) specifies that a motion for default shall contain "[s]worn or certified documentary prima facie evidence in support of the allegations of the complaint." Because Gov.Bar R. VII(12)(B)(2) "provide[s] otherwise," the general provision of Civ.R. 8(B) has no application in default proceedings involving the unauthorized practice of law. Therefore, Nationwide's failure to answer relator's complaint may not be deemed equivalent to an admission of the facts alleged in relator's complaint. Furthermore, we note that Nationwide was not a party to the agreed stipulations in this case and may not be bound by the factual stipulations contained therein. *See, e.g.*, *Thomas v. Wright State Univ. School of Medicine*, 2013-Ohio-3338, 3 N.E.3d 211, ¶ 17 (10th Dist.) ("Factual stipulations are not binding on a non-party").

**The Evidence in this Case Does Not Support the Board's Conclusion that
Nationwide and the Pro-Net Respondents Engaged in the Unauthorized
Practice of Law**

{¶ 19} Here, the board found that Nationwide and the Pro-Net respondents, through the actions of Nationwide, (1) negotiated and settled debts on behalf of Ohio customers with their creditors and counsel for their creditors, (2) provided advice and counsel to Ohio customers about debt settlements, and (3) drafted, reviewed, and validated settlement agreements and term agreements.

{¶ 20} Yet relator has presented no direct evidence from any of Nationwide's customers, their creditors, or their creditors' counsel who participated in those alleged negotiations. Instead, relator has submitted the affidavit and deposition testimony of Bloom along with the stipulations of the Pro-Net respondents. None of that evidence provides sufficient detail for this court to independently determine whether Nationwide's conduct crossed the line from permissible debt-settlement negotiations to the rendering of legal services that constitute the unauthorized practice of law under *Watkins Global*, 159 Ohio St.3d 241, 2020-Ohio-169, 150 N.E.3d 68. On the contrary, the evidence offers little more than conclusory statements about the general nature of the actions that Nationwide took on behalf of its Ohio customers.

{¶ 21} For example, Bloom averred:

> [Nationwide's senior officer Joanne Garneau] represented to me that [Nationwide is] the back-end company. That [it] take[s] care of all customer service related issues. That once the enrollment process is completed by [Pro-Net] the customer is handed over to [Nationwide] and provided the customer was approved by [Nationwide, it] would then take care of everything else from soup

to nuts there on out. All customer contact, all customer communication all debtor communication, all everything.

**{¶ 22}** Bloom further averred that Nationwide (1) "engaged in negotiations with third parties including legal counsel and creditors on behalf of a customer in an effort to negotiate and/or settle the customer[']s debt," (2) "advise[d] client[s] with respect to good faith offers of settlement and * * * negotiated settlement agreements on behalf of Ohio clients," and (3) indicated to Bloom that as part of its services to customers, it would "verify that settlement terms were properly documented" to ensure that creditors can never claim that the customers' accounts had not been adequately resolved.

**{¶ 23}** In addition to Bloom's affidavit and testimony being devoid of any detail regarding the specific content of the communications that Nationwide had with its customers, their creditors, or their creditor's counsel, his affidavit demonstrates that he had no specific knowledge of what Nationwide did on behalf of its customers once Pro-Net enrolled them in the debt-resolution program. Indeed, Bloom averred that Pro-Net "had no actual knowledge and no way to obtain actual knowledge about [Nationwide's] negotiations and/or settlement agreements and/or communications with creditors and/or communications with clients and/or communications with creditors' counsel." Consequently, many of Bloom's averments are nothing more than inadmissible hearsay. As such, they do not constitute proper sworn or certified evidence and may not support a finding that Nationwide engaged in the unauthorized practice of law.

**{¶ 24}** Even though Bloom specifically disavowed any personal knowledge of Nationwide's communications with or on behalf of its customers, he also averred that Nationwide, using the name Pro-Net, "would *send* settlement agreements to customers and would explain to the customers[:] * * * '[c]ompany will advise client of all good faith offers made by creditors and collectors and of their acceptance of

any offers made by company on behalf of client.' " (Emphasis added.) Bloom further averred that those settlement agreements explained: "Company may negotiate what is known as a term settlement on client's behalf. This is a settlement in which the company negotiates a lower amount than what is owed and makes payment arrangements with the creditors over time." However, Bloom's deposition testimony and the exhibits submitted therein show that the content of those averments is taken directly from a document titled "Debt Settlement Agreement" that Nationwide, using the name Pro-Net, used to formalize its relationship with its customers. Notably, Bloom did not suggest in either his affidavit or his deposition testimony that Nationwide *drafted* any settlement agreements to memorialize the terms of any negotiated debt settlement—an action that would clearly fall within the definition of providing legal services. Nor has relator submitted copies of any such documents for this court's review.

{¶ 25} Moreover, the scope of the representation as set forth in Nationwide's agreement with its customers does not appear to exceed the range of actions delineated in *Watkins Global* as permissible debt-settlement negotiations by nonattorneys, because there is no indication that Nationwide intended to use any legal tactics or methods during negotiations to effect results for its customers. *See Watkins Global*, 159 Ohio St.3d 241, 2020-Ohio-169, 150 N.E.3d 68, at ¶ 11-12. On the contrary, Nationwide's agreement expressly states: "In the event a creditor or debt collector pursues legal remedies against Client, neither this Agreement nor the Service includes legal representation." And there is no evidence in this record to establish that Nationwide engaged in any specific acts that exceeded the scope of that agreement.

{¶ 26} Although the Pro-Net respondents have stipulated to additional facts that are not contained in Bloom's affidavit or deposition testimony, those stipulations are similarly infirm. They identify general types of conduct that Nationwide purportedly engaged in, such as faxing powers of attorney, advising,

counseling, and validating and negotiating the resolution of debts. Again, there is no description of the advice that Nationwide gave to its customers or how Nationwide went about conducting negotiations on behalf of the customers—just the bare and erroneous legal conclusion that the general actions of giving unspecified advice and counsel and negotiating debt settlements necessarily constitute the unauthorized practice of law. And we are not bound by the stipulations of the parties on that issue of law. *See, e.g.*, *State ex rel. Steffen v. Myers*, 143 Ohio St.3d 430, 2015-Ohio-2005, 39 N.E.3d 483, ¶ 16 ("no court may be bound by any agreement, stipulation, or concession from the parties as to what the law requires"); *accord State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18 ("this court is not bound by the parties' stipulation on [a] legal issue").

{¶ 27} In light of these significant evidentiary deficiencies regarding the specific actions that Nationwide undertook on behalf of its customers, we cannot find that relator has submitted sufficient sworn or certified evidence to support its motion for default against Nationwide. Nor can we find that relator has proved by a preponderance of the evidence that the Pro-Net respondents engaged in the unauthorized practice of law through the actions of Nationwide.

### Conclusion

{¶ 28} We dismiss this case.

*Cause dismissed.*

O'CONNOR, C.J., and KENNEDY, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

FISCHER, J., not participating.

————————

Fanger & Associates, L.L.C., and Jeffrey J. Fanger; and Jean Desiree Blankenship, Bar Counsel, for relator.

McNeal, Schick, Archibald, & Biro Co., L.P.A., and Marilyn J. Singer, for respondents Andrew J. Bloom and Pro-Net Financial, Inc.

_____