[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Carson*, Slip Opinion No. 2023-Ohio-4036.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4036

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* CARSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Carson*, Slip Opinion No. 2023-Ohio-4036.]**

*Unauthorized practice of law ("UPL")—Under Gov.Bar R. VII(12)(G), in a default UPL proceeding, there must be sufficient "sworn" or certified documentary evidence submitted with default motion for trier of fact to find that each element of charged offense, in absence of contradictory evidence, has been proved by preponderance of evidence—For purposes of Gov.Bar R. VII(12)(G), "sworn" means that the evidence is based on personal knowledge of the facts being relayed, sets forth such facts as would be admissible into evidence, and shows that affiant is competent to testify to matters stated—Respondent engaged in UPL by holding himself out as an attorney on return of service for four subpoenas—Relator failed to present sworn or certified documentary prima facie evidence regarding relator's*

*other alleged conduct—Permanent injunction issued and civil penalty imposed in connection with first of two charged counts.*

(No. 2023-0426—Submitted May 2, 2023—Decided November 9, 2023.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. 2021-002.

_____

**Per Curiam.**

**{¶ 1}** In a two-count December 2021 complaint, relator, Cleveland Metropolitan Bar Association, charged respondent, Brett Carson, with engaging in the unauthorized practice of law in Ohio by holding himself out as an attorney and by preparing various legal documents on behalf of two other people.

**{¶ 2}** In January 2022, the Board on the Unauthorized Practice of Law attempted to serve relator's complaint on Carson at a South Euclid address by certified mail and by ordinary mail, the latter evidenced by a certificate of mailing, but both attempts were returned marked "NOT DELIVERABLE AS ADDRESSED" and "UNABLE TO FORWARD." (Capitalization sic.)

**{¶ 3}** In June 2022, the board issued an order to show cause directing relator to submit an alternative address for service on Carson. Relator furnished to the board two other addresses for Carson—one in Cleveland and the other in North Carolina. On July 13, 2022, the board attempted to serve Carson at each of those addresses by certified mail and by ordinary mail with certificates of mailing. Both certified-mail attempts were returned marked "UNABLE TO FORWARD"; the North Carolina attempt was also marked "INSUFFICIENT ADDRESS," and the Cleveland attempt was also marked "UNCLAIMED." (Capitalization sic.) The ordinary-mail attempt sent to North Carolina was returned marked "Does Not Live Here." However, the complaint sent to the Cleveland address by ordinary mail was not returned; therefore, service of the complaint on Carson is deemed complete. *See* Gov.Bar R. VII(2)(C).

{¶ 4} On January 6, 2023, relator filed a motion for default pursuant to Gov.Bar R. VII(12)(B) that contained a statement of its efforts to engage with Carson, purported sworn or certified documentary prima facie evidence in support of the allegations of the complaint, citations to authorities relator was relying on, a statement of mitigating factors or exculpatory evidence known to relator, a statement of the relief sought, and a certificate of service stating that the motion had been sent by ordinary mail to Carson at the Cleveland and South Euclid addresses. *See* Gov.Bar R. VII(12)(B). Carson has not answered the complaint or responded to the motion for default.

{¶ 5} A three-member panel of the board found that Carson was in default and that relator had proved by a preponderance of the evidence that Carson engaged in the unauthorized practice of law as described in both of the charged counts. The panel recommended that Carson be enjoined from engaging in additional acts of the unauthorized practice of law and be ordered to pay a civil penalty of $5,000 for each of the two violations. The board adopted the panel's findings and recommended sanction but recommended that we limit our finding of the unauthorized practice of law to Carson's holding himself out as an attorney in the two matters.

{¶ 6} For the reasons that follow, we find that relator has submitted sworn or certified prima facie evidence demonstrating that Carson engaged in the unauthorized practice of law by holding himself out as an attorney as charged in Count One of relator's complaint and we agree with the board's assessment that an injunction and a civil penalty for that violation are warranted. However, we reject the board's findings of fact, conclusions of law, and recommendation with respect to Count Two and dismiss it based on the insufficiency of the evidence.

## EVIDENTIARY REQUIREMENTS IN DEFAULT
## UNAUTHORIZED-PRACTICE-OF-LAW PROCEEDINGS

**{¶ 7}** Gov.Bar R. VII(12)(B)(2) requires a relator to submit "[s]worn or certified documentary prima facie evidence" to support the allegations of the complaint in a motion for default judgment in an unauthorized-practice-of-law ("UPL") proceeding. By its very nature, the respondent in a default UPL proceeding has not entered an appearance and thus cannot object to the relator's evidence. Therefore, if the requirements of the rule are to have any meaning, it is incumbent on this court to enforce them.

**{¶ 8}** Gov.Bar R. VII does not define the phrase "sworn or certified documentary prima facie evidence." Prima facie evidence is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." *Black's Law Dictionary* 701 (11th Ed.2019). This court has held, in the context of a criminal case, that "[p]rima facie evidence is such evidence as is sufficient * * * to establish the fact of guilt, and, if believed by the trier of the facts, it is sufficient for that purpose, unless rebutted or the contrary proved." *State v. Cummings*, 25 Ohio St.2d 219, 267 N.E.2d 812 (1971), paragraph two of the syllabus. Thus, in a default UPL proceeding, there must be sufficient sworn or certified documentary evidence submitted with the default motion for a trier of fact to find that each element of the charged offense, in the absence of contradictory evidence, has been proved by a preponderance of the evidence. *See* Gov.Bar R. VII(12)(G).

**{¶ 9}** "Documentary evidence" is "[e]vidence supplied by a writing or other document, which must be authenticated before the evidence is admissible." *Black's Law Dictionary* at 699. For the evidence to be admissible, there must be authentication or identification "sufficient to support a finding that the matter in question is what its proponent claims," Evid.R. 901(A)—hence the need for the evidence to be *sworn* or *certified* in default proceedings, in which there will be no oral testimony. Certified copies of public records are self-authenticating and do not

require extrinsic evidence of authenticity. Evid.R. 902(4). But other documents must be sworn to be admissible in a default proceeding. A "sworn statement" is "[a] statement given *under oath*; an affidavit." (Emphasis added.) *Black's Law Dictionary* at 1699.

{¶ 10} "An affidavit must appear, on its face, to have been taken before the proper officer and in compliance with all legal requisites. A paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit." *In re Disqualification of Pokorny*, 74 Ohio St.3d 1238, 657 N.E.2d 1345 (1992); *see also* R.C. 2319.02 ("An affidavit is a written declaration under oath * * *"). Accordingly, this court has rejected documents bearing a notary public's stamp but not her signature and lacking a notarial jurat or any other indication that the declarants had sworn to their statements or had made their statements under oath. *See State ex rel. White v. Franklin Cty. Bd. of Elections*, 160 Ohio St.3d 1, 2020-Ohio-524, 153 N.E.3d 1, ¶ 13; *see also* R.C. 147.542 (setting forth the requirements for a valid notarial certificate).

{¶ 11} In *Cincinnati Bar Assn. v. Newman*, 124 Ohio St.3d 505, 2010-Ohio-928, 924 N.E.2d 359, ¶ 7, we analogized the requirements of Civ.R. 56(E) for "[s]worn or certified copies" of documents submitted in support of motions for summary judgment to the requirement for "sworn or certified documents" submitted in support of a default motion in an attorney-discipline case under former Gov.Bar R. V(6)(F)(1).[1] Civ.R. 56(E) provides that "[s]worn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." And we have held, " 'The requirement of Civ.R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by

---

1. The requirement for sworn or certified documentary prima facie evidence in support of a default motion in an attorney-discipline proceeding is now set forth in Gov.Bar R. V(14)(F)(1)(b). The requirements under that rule and its predecessor discussed in *Newman* are identical to the requirement of Gov.Bar R. VII(12)(B)(2) in a default UPL proceeding.

attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions.' " *Newman* at ¶ 7, quoting *State ex. rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981). Applying that standard to the evidence submitted in *Newman*, we found that the record lacked sufficient sworn or certified documentary prima facie evidence to support the relator's allegations of attorney misconduct. *Newman* at ¶ 9.

**{¶ 12}** In addition to sworn or certified copies of all papers referred to, Civ.R. 56(E) requires affidavits—i.e., "sworn statements," *Black's Law Dictionary* at 1699—submitted with motions for summary judgment to (1) be made on personal knowledge, (2) set forth such facts as would be admissible into evidence, and (3) show that the affiant is competent to testify to the matters stated in the affidavit. We now hold that these requirements, directed toward ensuring the admissibility of the facts contained in an affidavit or sworn statement, apply equally to the requirement for "sworn" evidence submitted in support of default motions in UPL proceedings.

**{¶ 13}** Having established the form of the sworn evidence necessary to support a default motion in a UPL proceeding, we turn to the evidence submitted with relator's motion in this case.

## RELATOR'S DEFAULT EVIDENCE

**{¶ 14}** Relator has submitted a certificate from this court's Office of Attorney Services showing that Carson, an Ohio resident, has never been admitted to the practice of law in Ohio and that he has not applied for or been granted pro hac vice status in this state. In addition, relator has submitted additional documents related to each of the two counts charged in its complaint.

### Count One: The Jackson Matter

**{¶ 15}** The first count of relator's complaint relates to Carson's conduct with respect to his cousin, Randa Jackson. In April 2021, Jackson filed a grievance against Carson with relator. In the grievance, Jackson stated that Carson had told

her that he was an attorney, given her advice regarding a dispute she was having with a contractor, and filed legal documents on her behalf.

{¶ 16} Jackson's grievance consists of a printout of a completed online complaint form that bears her electronic signature below the statement, "By signing this form, I attest that my statements herein and the documents attached are true and accurate to the best of my knowledge." As noted above, "[a] paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit." *Pokorny*, 74 Ohio St.3d at 1238, 657 N.E.2d 1345. Jackson's signature is not notarized and offers no indication that it was sworn or affirmed before an officer. Therefore, Jackson's grievance is not an affidavit and does not constitute sworn evidence.

{¶ 17} Furthermore, even if Jackson's grievance had been properly sworn or certified, the only indication in that document that Carson *drafted* or *prepared* legal documents on her behalf as the panel found consists of Jackson's response to the question "What services did this person provide?" Next to that question, Jackson checked a box, among others, indicating that Carson had "[s]elected, drafted, or completed legal forms, documents, or agreements" on her behalf. Jackson's narrative explaining the details of her grievance states only that Carson "*filed* [a] claim and amendment against contractor" and "*sent* subpoenas to banks and researched the backgrounds of the defendants in [her] case." (Emphasis added.) But neither of those actions necessarily encompasses the drafting of those documents. Moreover, with the exception of the subpoenas discussed below, relator has not submitted copies— let alone sworn copies—of any of the documents that Carson allegedly prepared.

{¶ 18} In addition to Jackson's grievance, relator submitted an affidavit from bar counsel Christopher Joseph Klasa stating that it is based on his personal knowledge and establishes his competency to testify. *See* Evid.R. 601 (providing that every person is competent to be a witness unless disqualified for certain enumerated reasons, including that the person is incapable of expressing himself or

herself so as to be understood or is incapable of understanding the duty of a witness to tell the truth—none of which apply here).

{¶ 19} According to Klasa's affidavit, during relator's investigation of Jackson's grievance, Carson spoke with a member of relator's Committee on the Unauthorized Practice of Law. After receiving a copy of relator's draft complaint in December 2021, Carson sent relator's counsel an email describing the work he had performed in Jackson's matter. Klasa's affidavit identifies that email and states that "[a] true and accurate copy * * * is attached as Exhibit F." With regard to the legal aspects of Jackson's matter, Carson stated in the email that they had talked about and worked together on her case and that they had "drafted it," without stating exactly what "it" was. Carson represented that "[t]his is not the kind of behavior [he would] ever indulge in again" and that he did not recall issuing document subpoenas as an attorney on Jackson's behalf. Carson closed that email with the typed signature, "Brett W. Carson Jr."

{¶ 20} Also identified in Klasa's affidavit and attached thereto are true and accurate copies of four subpoenas bearing the caption for Jackson's case and two file stamps of the Cuyahoga Count Clerk of Courts dated January 15 and 19, 2021. The second page of each of those subpoenas includes an affidavit of service bearing what appears to be Carson's signature above the circled designation "Attorney," indicating that he was serving the subpoenas as an attorney on behalf of Jackson. The sworn evidence consisting of Klasa's affidavit authenticating Carson's own email and the subpoenas, which contain Carson's own affidavits of service, constitute prima facie evidence that Carson held himself out as an attorney as charged in Count One of relator's complaint.

### Count Two: The Ganesh Matter

{¶ 21} In August 2021, attorney LeeDaun C. Williams filed a grievance against Carson on behalf of her client Rajeswari Chandrasekar Ganesh. Williams attached copies of multiple communications that were purportedly exchanged

between Carson and Ganesh. In that grievance, Williams attested that Carson had prepared legal documents for Ganesh and provided legal advice to her in connection with a Cuyahoga County domestic-relations case and that he had collected a "retainer" of $2,500 from her for that representation. Although the grievance was signed under an attestation that the statements it contained and the documents attached were true and accurate to the best of Williams's knowledge, it was not notarized. Therefore, it is not an affidavit and does not constitute sworn evidence as required by Gov.Bar R. VII(B)(2).

{¶ 22} In addition to that infirmity, it is evident that Williams did not possess personal knowledge of the facts she relayed to relator in her grievance. In response to a question on the complaint form asking how she had become aware that Carson was providing legal services, Williams stated: "[Ganesh] informed me that Brett Carson prepared legal filings for her between her former attorney and myself. I asked for documentation and she provided it to me. Documentation from Brett Carson outlines the services he provided to [Ganesh]."

{¶ 23} This court has previously found that statements of an affiant in a default UPL proceeding that were not based on personal knowledge consisted of nothing more than inadmissible hearsay. *Ohio State Bar Assn. v. Pro-Net Fin., Inc.*, 168 Ohio St.3d 115, 2022-Ohio-726, 196 N.E.3d 792, ¶ 23. We held that those statements did not constitute proper sworn or certified evidence and could not support a finding that the respondent engaged in the unauthorized practice of law. *Id.*; *see also Dayton Bar Assn. v. Sebree*, 104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318, ¶ 9 (holding that a motion for default in an attorney-discipline proceeding supported only by summary, conclusory, and hearsay-filled affidavits is not supported by the prima facie evidence of misconduct required by rule). Because relator offers Ganesh's out-of-court statements to Williams to prove the truth of the matter asserted—i.e., that Carson held himself out as an attorney and prepared legal documents and filed them on her behalf—those statements constitute

inadmissible hearsay. And under *Pro-Net* and *Sebree*, they would not be admissible to prove that Carson engaged in the unauthorized practice of law even if Williams's grievance had been notarized.

{¶ 24} The documents that Williams offered to support the allegations in her grievance—i.e., the emails that Ganesh purportedly exchanged with Carson—are likewise infirm. It is true that Williams has attested that those documents are true and accurate to the best of her knowledge, but she did not do so under oath. Nor is there evidence indicating that she possessed personal knowledge of that fact. The body of Williams's grievance states only that she "asked for documentation and [Ganesh] provided it to [her]" and that the "[d]ocumentation from Brett Carson outlines the services he provided to [Ganesh]." Those documents include seven separate emails from Ganesh to Williams. Attached to those emails are other emails that were exchanged between Ganesh and Carson.

{¶ 25} The statements attributed to Carson in those emails—particularly the statements in a December 13, 2020 email regarding the documents he prepared and the services he provided to Ganesh—could be entirely excluded from the definition of hearsay as admissions by a party-opponent. *See* Evid.R. 801(D)(2) (providing that a statement is not hearsay if it is offered against a party and is the party's own statement). But relator has offered only hearsay statements from Williams containing hearsay statements from Ganesh to establish the origin of those documents. Because the emails proffered by relator have not been properly sworn under Gov.Bar R. VII(12)(B) and are not based on personal knowledge, they are not admissible to establish that Carson engaged in the unauthorized practice of law. Under *Newman* and as explained in our holding above, Gov.Bar. R. VII(12)(B) required relator to submit an affidavit from a person with personal knowledge of the origin of the emails (e.g., Ganesh) (1) setting forth such facts as would be admissible into evidence, (2) showing that the affiant is competent to testify to the matters set forth in the affidavit, (3) identifying those documents as emails

10

exchanged between Carson and Ganesh, and (4) stating that they are true and accurate copies of the originals.

{¶ 26} Because relator has not presented any sworn or certified documentary prima facie evidence regarding Carson's conduct relative to the Ganesh matter, we dismiss Count Two of relator's complaint.

**CARSON ENGAGED IN THE UNAUTHORIZED PRACTICE OF LAW**

{¶ 27} This court has original jurisdiction over the admission to the practice of law in Ohio, the discipline of persons so admitted, and "all other matters relating to the practice of law," Article IV, Section 2(B)(1)(g), Ohio Constitution, which includes the regulation of the unauthorized practice of law, *Royal Indemn. Co. v. J.C. Penney Co., Inc.*, 27 Ohio St.3d 31, 34, 501 N.E.2d 617 (1986); *Greenspan v. Third Fed. S. & L. Assn.*, 122 Ohio St.3d 455, 2009-Ohio-3508, 912 N.E.2d 567, ¶ 16. The purpose of that regulation is to "protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40.

{¶ 28} We have defined the unauthorized practice of law as including both the "rendering of legal services for another," Gov.Bar R. VII(31)(J)(1)(a) through (c), and the "[h]olding out to the public or otherwise representing oneself as authorized to practice law in Ohio" by any person who is not authorized to practice law under our rules, Gov.Bar R. VII(31)(J)(1)(d). Indeed, nonlawyers are prohibited from holding themselves out "in any manner as an attorney at law" and from representing that they are authorized to practice law "orally or in writing, directly or indirectly." R.C. 4705.07(A)(1) and (2).

{¶ 29} Relator's sworn evidence with respect to Count One demonstrates that Carson held himself out as an attorney in affidavits confirming the service of four subpoenas in Jackson's legal matter. We therefore adopt the board's

recommendation and find that Carson engaged in the unauthorized practice of law with respect to that count.

## AN INJUNCTION AND CIVIL PENALTY ARE WARRANTED

**{¶ 30}** Because we have found that Carson engaged in the unauthorized practice of law in the Jackson matter, we adopt the board's recommendation that we issue an injunction prohibiting him from further engaging in the unauthorized practice of law in Ohio.

**{¶ 31}** The board also recommends that we impose a civil penalty of $5,000 for this violation pursuant to Gov.Bar R. VII(14)(B). That provision instructs us to consider (1) the degree of a respondent's cooperation during the investigation, (2) the number of times the respondent engaged in the unauthorized practice of law, (3) the flagrancy of the respondent's violations, (4) any harm that the violations caused to third parties, and (5) any other relevant factors, which may include the aggravating and mitigating circumstances identified in UPL Reg. 400(F). *See also Disciplinary Counsel v. Ward*, 155 Ohio St.3d 488, 2018-Ohio-5083, 122 N.E.3d 168, ¶ 13.

**{¶ 32}** Carson's participation in relator's investigation of this matter consisted of a single telephone conversation with relator's investigator and an email he sent in response to relator's notice of intent to file a complaint against him. Moreover, Carson failed to participate in the formal proceedings in any way. Consequently, the board found that his cooperation was minimal, at best. As discussed above, relator's evidence shows that Carson engaged in a single instance of the unauthorized practice of law by holding himself out as an attorney with respect to the Jackson matter. Although the board found that his conduct in the Jackson matter was not an isolated incident because it occurred over a period of at least several months, our findings of the unauthorized practice of law are limited to his conduct in holding himself out as an attorney on the return of service for four

separate subpoenas on a single day. Based on the record before us, it appears that the only harm Jackson suffered was delay in the resolution of her legal matter.

{¶ 33} Having weighed these factors, we agree with the board's assessment that a civil penalty of $5,000—one-half the maximum amount authorized per offense by Gov.Bar R. VII(14)(B)—is warranted for Carson's single instance of the unauthorized practice of law in this case.

## CONCLUSION

{¶ 34} Accordingly, we enjoin Brett Carson from engaging in further acts constituting the unauthorized practice of law in Ohio. We also order Carson to pay a civil penalty of $5,000. Costs are taxed to Carson.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ.

_____

Tucker Ellis, L.L.P., and Chad M. Eggspuehler; and Christopher J. Klasa and Kelli J. Perk, Bar Counsel, for relator.

_____